**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

**RUDY MEDRANO,**
**Plaintiff,**

**-vs-** **Case No. A-09-CA-584-SS**

**MICHAEL J. ASTRUE, Commissioner of Social Security,**
**Defendant.**

---

**O R D E R**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff Rudy Medrano's Complaint [#9] seeking review of a final decision of the Commissioner of the Social Security Administration pursuant to § 205 of the Social Security Act, 42 U.S.C. § 405(g), Defendant's Answer [#15], Plaintiff's Brief [#19], Defendant's Brief in Support of the Commissioner's Decision [#20], and the transcript of the Social Security Record in this case ("Tr."). Plaintiff has been granted leave to proceed in forma pauperis. *See* Order [#8].

All matters in this case were referred to the Honorable Andrew W. Austin, United States Magistrate Judge, for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges, as amended, effective January 1, 1994. On April 16, 2010, the Magistrate Judge issued his report and recommendation that this Court find the Commissioner's decision is supported by substantial evidence and correctly applied the relevant legal standards, and affirm the decision of the Commissioner. On April 26, 2010, Plaintiff timely filed his written objections to the Magistrate Judge's report and

recommendation. *See* Objection [#22]. Therefore, the Court reviews the record de novo, *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985), and thereafter enters the following.

**Background**

**I. Procedural History**

Plaintiff Rudy Medrano (hereinafter "Medrano" or "Plaintiff") filed an application for a period of disability and disability insurance benefits under Title II and Title XVIII of the Social Security Act (the "Act") on November 14, 2006. Tr. at 85. Medrano alleges disability beginning October 20, 2006. *Id.* at 100. His claim was initially denied on January 26, 2007, and upon reconsideration on April 27, 2007. *Id.* at 44, 54. Medrano timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 11, 2008. *Id.* at 13, 20-41. Medrano testified at the hearing and was represented by his attorney, Susan Denzer.[1] *Id.* 13, 20. Ilene Gray, a vocational expert, also appeared and testified at the hearing. *Id.* at 20. The ALJ issued an unfavorable decision dated August 18, 2008, finding Medrano was not disabled within the meaning of the Act. *Id.* at 19-20. The Appeals Council declined Medrano's request for review by notice on June 3, 2009, making it the final decision of the Commissioner. *Id.* at 1-3. Medrano then brought the instant action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying him benefits under the Act.

**II. Factual Background**

Medrano was born on April 10, 1967 and was thirty-nine years old when he filed his application for Social Security disability insurance benefits in November 2006. *Id.* at 18, 85. He has a high school education. *Id.* at 23, 104. His past work experience consists mainly of landscaping and construction work, including completing yard and landscape maintenance of rental property and

---

[1] In this appeal, Medrano is represented by Mary Ellen Felps.

commercial buildings. *Id.* at 100-101, 106-13. In this capacity, he operated tools and equipment associated with landscaping work and often lifted objects of twenty-five pounds. *Id.* at 101, 107. For his work, Medrano also engaged in walking, standing, and climbing, for extended periods of time. *Id.* Medrano's last job was as a general laborer in the construction of a restaurant, which ended on June 27, 2006. *Id.* at 100-13.

Medical records dated January 2006 note Medrano was complaining of pain in his feet. *Id.* at 166, 207. Medrano reported his feet becoming red and swollen when they start to hurt, leading the examining physician to suspect gout. *Id.* At the time of this examination, Medrano weighed over 350 pounds. *Id.*

On October 20, 2006, Medrano was admitted to the hospital due to complications from diabetes. It is unclear from the record when Medrano's diabetes was diagnosed.[2] Mark S. Lane, M.D. ("Dr. Lane") filled out an evaluation of Medrano's condition on October 31, 2006. When Medrano was admitted to the hospital on October 20, his blood sugar was 358. Medrano was later transferred to Metroplex ICU for management of his diabetic ketoacidosis under the care of Michael Fields, M.D. ("Dr. Fields"). During examination, Dr. Fields also found Medrano to be morbidly obese. Medrano was given Novulin insulin twice a day, along with Lantus at bedtime. Since his discharge from the hospital on October 24, Dr. Lane notes Medrano has been checking his blood sugar three times a day and his blood sugars are improving. While at the hospital, Medrano received diabetic education and was able to see a dietitian. At the time of Dr. Lane's evaluation, Medrano weighed 342 pounds. *Id.* at 162, 203, 209-14, 219-27.

[2] Sundaram Sukumar, M.D. ("Dr. Sukumar") notes Medrano's diabetes was diagnosed seven to nine months before Dr. Sukumar conducted his evaluation of Medrano's condition in January 2007. Tr. at 170. This would mean Medrano's diabetes was first diagnosed between April and June of 2006.

Medrano was examined by Dr. Lane again in November 2006 as a follow up to his hospitalization in the previous month. Dr. Lane noted Medrano "feels pretty good" with his blood sugars running between 85 and 130 at all times. Dr. Lane further indicated Medrano continued to use Novulin insulin twice a day and also took Lantus at bedtime. Dr. Lane did not find any other abnormalities and gave Medrano an assessment of diabetes mellitus presenting with diabetic ketoacidosis and morbid obesity. Dr. Lane indicated he had advised Medrano about his insulin usage and would seek to add Metformin to his medications. Dr. Lane finally noted Medrano should check back with him in two weeks regarding his progress.[3] *Id.* at 160-61, 201-2.

Sundaram Sukumar, M.D. ("Dr. Sukumar") performed a consultative evaluation of Medrano on January 12, 2007. Dr. Sukumar concluded Medrano suffered from obesity, generalized osteoarthritis, and diabetes mellitus. Dr. Sukumar found Medrano had curtailed his physical activity as a result of his weight gain, which had resulted in symptoms including arthralgias, myalgias, fatigue, and shortness of breath. Dr. Sukumar also found Medrano's gouty arthritis to be moderately severe and primarily affecting the knees and ankles. As a result of his arthritis, Medrano exhibited symptoms of joint stiffness, crepitation, and myalgias. Regarding medication, Dr. Sukumar noted Medrano took Indomethacin for his arthritis, was on insulin therapy, and had begun taking Metformin recently for his diabetes. Dr. Sukumar also asked Michael Boyd ("Boyd") to perform an examination on Medrano's right foot. Although Boyd found no evidence of acute bone abnormality, he did find degenerative arthritis in the right hallux valgus and tenderness over the first metatarsal joint, right worse than left. Medrano weighed 339 pounds with a body mass index of 48.6 at the time of his evaluation by Dr. Sukumar. *Id.* at 168-74, 188-89, 194-95.

---

[3] It is unclear if Medrano returned to see Mark S. Lane, M.D. ("Dr. Lane") two weeks after his November 16, 2006 appointment as this report, if it exists, does not appear in the record.

Medrano returned to Dr. Lane on March 8, 2007 for another check up. At this appointment, Dr. Lane indicated Medrano did not seem to be exhibiting any hypoglycemic or hyperglycemic symptoms. Despite Medrano's inability to afford the strips to check his blood sugars, Dr. Lane indicated Medrano's blood sugar was only 105 after eating cereal in the morning, two hours prior to his appointment with Dr. Lane.[4] Dr. Lane further noted Medrano continued to take Novulin insulin, Lantus, and Metformin in accordance with the prescribed amounts. On this date, Medrano weighed 330 pounds. *Id.* at 197-98.

On January 20, 2007, Frederick Cremona, M.D. ("Dr. Cremona") performed a physical residual functional capacity assessment on Medrano, accounting for his obesity, insulin dependant diabetes mellitus, and arthritis. During the assessment, Medrano indicated his arthritis primarily affected the knees and ankles and he was suffering from fatigue, leg cramps, and bilateral foot pain. An x-ray of Medrano's foot revealed moderate osteoarthritis. Dr. Cremona found Medrano capable of lifting and/or carrying twenty pounds occasionally and ten pounds frequently, standing (with normal breaks) for about six hours in an eight-hour workday, sitting (with normal breaks) of about six hours in an eight-hour workday, and pushing and/or pulling an unlimited weight. He also found Medrano capable of climbing ramps or stairs, but not ladders, ropes, or scaffolds. Dr. Cremona further noted Medrano should have no issues balancing, stooping, kneeling, crouching, or crawling. Dr. Cremona concluded Medrano's symptoms and limitations were not wholly supported. *Id.* at 175-182.

Maxwell Scarlett, M.D. ("Dr. Scarlett") treated Medrano during his emergency room visit on May 30, 2008. Medrano was treated for pain in his left foot for which Dr. Scarlett prescribed Vicodin. In addition to the pain, Dr. Scarlett noted Medrano had tenderness in his lower extremities and trace

---

[4] During his November 2006 appointment with Dr. Lane, Medrano noted he had been able to keep his blood sugars between 85 and 130 at all times, presumably the target range provided to Medrano by Dr. Lane. Tr. at 201.

edema. At the time of this hospital visit, Medrano weighed 161 kilograms, which is over 350 pounds. *Id.* at 241-42.

Medrano's administrative hearing was held on June 11, 2008. *Id.* at 64. At the hearing, Medrano testified he was suffering from gout, arthritis, and further complications from diabetes. He also stated his arthritic pain flares-up every month and may last anywhere from one to three weeks at a time. During these flare-ups, Medrano claimed he often elevated his feet to relieve pain. Although his pain is more severe during these flare-ups, Medrano noted his arthritic pain is constant. For his diabetes, Medrano testified he takes Humulin insulin in the mornings and evenings, Lantus at bedtime, and Metformin twice a day. He had also been prescribed an additional medication, Gabapentin, for nerve pain, which he was unable to obtain due to his financial situation. For pain, Medrano indicated he has relied primarily on over-the-counter drugs, including Advil, Motrin, and Naproxen. For his gout and arthritis, Medrano stated he takes Indomethacin. Medrano also testified he needed to alternate between standing and sitting every ten minutes or so in order to constantly shift his weight from one foot to another to deal with pain in his lower back and hip, a possible indication of sciatica. *Id.* at 22-38.

Medrano also provided information stating he no longer performed any household chores. However, he does assist in the care of his terminally ill wife and before the current flare-up of gout, he would drive once or twice a week. Medrano also indicated during gout flare-ups, he has more difficulty performing routine tasks, such as dressing and bathing himself. Medrano further noted he often wears flip-flops, which he wore on his right foot during the hearing, because his feet are too swollen from gout to put shoes on. Additionally, Medrano testified he has used crutches since 2004. *Id.*

Ilene Gray ("Gray"), a vocational expert, also testified at Medrano's hearing. Gray recounted

and classified Medrano's past work experience. The ALJ posed a hypothetical claimant to Gray who was the same age, education and work history as Medrano, who is capable of lifting and carrying ten pounds occasionally, less than ten pounds frequently, can stand and/or walk two hours out of an eight hour day, can sit six hours out of an eight hour day, limited to pushing or pulling only ten pounds, limited to occasional balancing and climbing of stairs and ramps, should avoid the operation of foot pedals and climbing ropes and ladders. Gray testified such an individual would not be able to perform his past work as a construction worker, landscaper, or landscape supervisor. *Id.* at 38-40.

However, Gray stated there were jobs in the national economy which such an individual would be able to perform. Specifically, Gray testified an individual with such limitations is capable of performing the requirements of occupations such as charge account clerk, with 3,200 such jobs in the State of Texas and 41,000 nationally; final assembler of optical goods, with 6,000 such jobs in the State of Texas and 80,000 nationally; and clerical addresser, with 3,200 such jobs in the State of Texas and 43,000 nationally. Gray stated missing more than two days per month at these jobs would be excessive. Gray finally testified the individual would not be able to perform such work if the individual required elevating his legs to waist level. *Id.*

**III. The Findings of the ALJ**

The ALJ first found Medrano had not engaged in substantial gainful activity since October 20, 2006, the alleged onset date. Tr. at 15. He found Medrano has the following severe impairments: obesity, gout, osteoarthritis, and diabetes mellitus. *Id.* The ALJ further found Medrano does not have an impairment or combination of impairments which meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In considering the entire record, the ALJ found Medrano has the residual functional capacity ("RFC") to lift or carry ten pounds occasionally and less than ten pounds frequently, to stand or walk for two hours in an eight-hour workday, and to sit six

hours in an eight-hour workday. *Id.* at 16. The ALJ also found Medrano capable of occasionally balancing and climbing stairs or ramps, but found he should avoid operating foot pedals and climbing ropes, ladders, or scaffolds. *Id.* Furthermore, the ALJ limited Medrano's ability to push or pull to ten pounds. *Id.*

After considering Medrano's age, education, work experience, and RFC, the ALJ found there are jobs that exist in significant numbers in the national economy which Medrano can perform. *Id.* at 18. Specifically, the ALJ found Medrano capable of performing the requirements of occupations such as charge account clerk, with 3,200 such jobs in the State of Texas and 41,000 nationally; final assembler of optical goods, with 6,000 such jobs in the State of Texas and 80,000 nationally; and clerical addresser, with 3,200 such jobs in the State of Texas and 43,000 nationally. *Id.* at 19. Accordingly, the ALJ found Medrano was not disabled as defined in the Act from October 20, 2006, through the date of the decision. *Id.*

**IV. Issues on Appeal Before the Court**

Plaintiff contends the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards. Specifically, Plaintiff argues (1) the ALJ failed to comply with SSR 02-1p in not considering the impact of Plaintiff's obesity on his ability to work; and (2) the ALJ erred in his findings regarding Plaintiff's RFC.

**Analysis**

**I. Standard of Review**

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner correctly applied the relevant legal standards. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is more than a scintilla of evidence

but less than a preponderance—in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez*, 64 F.3d at 174. However, the Court cannot reconsider the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The Commissioner, rather than the courts, must resolve conflicts in the evidence. *Martinez*, 64 F.3d at 174. If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir.1990) ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g).

**II. Failure to Consider Obesity on Plaintiff's Ability to Work**

Medrano contends the ALJ failed to consider the impact of his obesity on his ability to work. *See* Pl.'s Obj. [#22] at 1. Specifically, Medrano argues the ALJ did not apply Social Security Ruling ("SSR") 02-1p properly because the ALJ failed to explicitly address the issues SSR 02-1p requires an ALJ to consider regarding obesity, including "limitations of function in sitting as well as standing and walking; in carrying; manipulating; and tolerating extreme heat, humidity, and hazards." *Id.* Medrano asserts a greater limitation in function would have been found had his obesity been properly considered. *Id.* at 3.

Yet the ALJ's written opinion demonstrates the ALJ properly considered Medrano's obesity when determining his ability to work. In assessing the relevant factors, the ALJ explicitly relied on the

consultative evaluation conducted by Dr. Sukumar and noted Medrano was "morbid[ly] obes[e] with a body mass index of 48.6." Tr. at 17. Moreover, pursuant to 20 C.F.R. § 404.1545(a)(3), the ALJ took into account Medrano's testimony regarding his ailments, including his "gouty arthritis, insulin dependent diabetes mellitus, osteoarthritis, and *obesity*." *Id.* at 16 (emphasis added). The ALJ considered a combination of Plaintiff's impairments, along with his morbid obesity, and concluded the evidence did not support finding Medrano was precluded from performing all work-related activities on his alleged onset date.[5] *Id.* As a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision, the Court is unable to find the ALJ's conclusion denying disability benefits to Medrano to be lacking substantial evidentiary support. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988).

Even so, Medrano claims his case should be remanded because the ALJ's failure to state his method of evaluating Medrano's functional ability in relation to his obesity violated SSR 02-1p and resulted in a prejudicial judgment against Medrano. *See* Pl.'s Obj. [#22] at 2. Essentially, Medrano is alleging a procedural error by the ALJ in not complying with SSR 02-1p, which states "[a]s with any other impairment, [the Social Security Administration] will explain how we reached our conclusions on whether obesity caused any physical or mental limitations [in assessing a claimant's RFC]." *See* SSR 02-1p, 2000 WL 628049, at *7. Medrano argues the ALJ had "a specific duty to explain how he arrived at the finding of residual functional capacity in regard to obesity" and proper consideration of

---

[5] Among the other impairments considered by the ALJ included "tenderness over the first metatarsal joint, right worse than left, and degenerative arthritis in the right hallux valgus." Tr. at 17. In determining Medrano's ability to work, the ALJ further noted Medrano had required "medical intervention on two occasions for gouty arthritic pain" and had reported "symptoms suggestive of a peripheral neuropathy." *Id.*

his obesity would have resulted in the ALJ finding Medrano disabled as provided in SSR 02-1p.[6] *Id.* at 2, 4. In this context, Medrano construes SSR 02-1p as an imperative ruling, which requires the ALJ "to find specific limitations of function based on obesity." *Id.* at 3.

But contrary to Medrano's assertions,[7] SSR 02-1p does not state obesity necessarily causes any additional function limitations; rather, it provides obesity *can* cause such limitations. *See* SSR 02-1p, 2000 WL 628049, at *6 ("Obesity *can* cause limitation of function. . . . An individual *may* have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It *may* also affect ability to do postural functions, such as climbing, balance, stooping, and crouching.") (emphasis added).[8] Consequently, the ALJ is not required to find any particular limitations of functions because of Medrano's obesity.

---

[6] In particular, Medrano contends he is disabled under SSR 02-1p and cites the following language:

> [I]f the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and [the Social Security Administration] will then make a finding of medical equivalence.

*Id.* at *5. However, the ALJ found "[t]here is no evidence [Medrano] experienced the degree of pain and functional limitation required to meet or equal the criteria of Medical Listing 1.02, major dysfunction of a joint(s), Medical Listing 9.08, diabetes mellitus, or any other Medical Listing." Tr. at 16. Because the ALJ properly considered all the relevant evidence, and because the ALJ's determination as to the degree of pain is entitled to considerable deference, the Court is unable to disturb this conclusion by the ALJ. *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988); *see also Dellolio v. Heckler*, 705 F.2d 123, 127 (5th Cir. 1983).

[7] Specifically, Plaintiff states "obesity causes limitations of function in sitting as well as standing and walking; in carrying; manipulating; and tolerating extreme heat, humidity, and hazards." *See* Pl.'s Obj. [#22] at 1. According to Plaintiff, obesity also "limits the ability to sustain function over time." *Id.*

[8] SSR 02-1p also states:

> [The Social Security Administration] will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment *may* or *may not* increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

*See* SSR 02-1p, 2000 WL 628049, at *6 (emphasis added).

Furthermore, as the Magistrate Judge explained, a plaintiff seeking judicial review must also demonstrate prejudice arising from the alleged error to be entitled to relief. *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981). A minor procedural error does not provide sufficient grounds for remand. *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (refusing to render an ALJ's decision unsupported by substantial evidence when a minor procedural impropriety did not result in prejudicial judgment); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (stating "[p]rocedural perfection in administrative proceedings is not required" and courts will not vacate a judgment of an ALJ "unless substantial rights of a party have been affected"). In the instant case, although the ALJ's decision does not explicitly explain how the ALJ reached his conclusion on whether obesity caused any physical limitations,[9] the written decision shows the ALJ recognized obesity contributed to Medrano's physical limitations and incorporated these limitations into the RFC finding. In particular, the ALJ found Medrano capable of doing only sedentary work. Tr. at 17. The ALJ also found Medrano could only push or pull ten pounds occasionally, stand or walk two hours in an eight-hour workday, and sit for six hours in an eight-hour workday. *Id.* at 16. The ALJ also found Medrano could not climb ropes, ladders, or scaffolds, and he could only occasionally climb ramps and stairs, balance, or operate foot pedals. *Id.* Consequently, because the ALJ listed obesity as a severe impairment, and because it was clearly taken into account in making the RFC determination, this issue is not grounds for remand.[10]

## III. Findings Regarding Plaintiff's Residual Functional Capacity

[9] Medrano does not allege he has any mental limitations.

[10] As a side note, Medrano also takes issue with the ALJ's finding "an obese person with gout and osteoarthritis could balance at all or climb stairs even occasionally." *See* Pl.'s Obj [#22] at 2. Unfortunately, Medrano fails to explain how this finding changes the ALJ's disability determination. The ALJ has limited Medrano to sedentary work and none of the jobs listed by the ALJ, such as charge account clerk, final assembler of optical goods, or clerical addresser, require climbing or balancing. Tr. at 17-19, 39. Thus, even assuming Medrano is incapable of balancing or climbing stairs at all, this would not change the ALJ's disability determination.

Medrano also contests the ALJ's findings regarding his RFC. *See* Pl.'s Obj. [#22] at 4. The ALJ determined Medrano is capable of performing work requiring lifting and carrying ten pounds occasionally and less than ten pounds frequently with the ability to stand and walk two out of eight hours and to sit six out of eight hours. Tr. at 16. Medrano claims these findings are not supported by substantial medical evidence and the evidence actually supports a more limited RFC finding.[11] *See* Pl.'s Obj. [#22] at 4, 6.

In reviewing the ALJ's decision, this Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [its] judgment for that of the Secretary, even if the evidence preponderates against the Secretary's decision." *Johnson*, 864 F.2d at 343. To determine a claimant's RFC, the ALJ should consider all of the relevant medical and non-medical evidence. 20 C.F.R. § 404.1545(a)(3). However, the assessment of a claimant's RFC is reserved solely to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); 20 C.F.R. § 404.1527(e)(2). Again, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson*, 864 F.2d at 343–44.

A review of the ALJ's written decision indicates the ALJ considered the relevant medical evidence, including the related symptoms and the extent to which Medrano's impairments affected his capacity to do work-related activities in determining his RFC. Tr. at 16-18. Specifically, the ALJ considered the consultative evaluation by Dr. Sukumar, who found Medrano exhibited no abnormalities, other than tenderness over the first metatarsal joint, degenerative arthritis in the right hallux valgus, and morbid obesity with a body mass index of 48.6. *Id.* at 17, 170-73. Additionally, the

[11] Medrano articulates this position in his objections to the Report and Recommendation of the Magistrate Judge and towards the end of his brief, stating "the evidence supports a finding that [his] residual functioning capacity is less than that found by the ALJ." *See* Pl.'s Obj. [#22] at 6; *see also* Pl.'s Br. [#19] at 9. Furthermore, Medrano alleges his conditions "are far more severe and far more physically limiting than the ALJ found." *See* Pl.'s Obj. [#22] at 7.

ALJ took into account Dr. Sukumar's evaluation that Medrano exhibited symptoms of a peripheral neuropathy. *Id.* at 17, 170. The ALJ also found Medrano's diabetes mellitus "relatively well controlled with no evidence of organ damage," *Id.* at 17, 196-208, 230-40, and he primarily relied upon over-the-counter medication for pain. *Id.* at 37. The ALJ further found upon physical examination, Medrano only exhibited trace edema and demonstrated a normal gait. *Id.* at 17, 171-72, 241-42. The ALJ also noted Medrano's need for medical intervention on two occasions for gouty arthritic pain, the first time in January 2006, and the second time in May 2008. *Id.* at 17, 207, 241-42.

In addition to medical evidence, the ALJ also considered Medrano's testimony regarding symptoms. *Id.* at 16-17. The ALJ took into account Medrano's use of crutches for gout flare-ups since 2004, his need to elevate his feet to waist level during periods of exacerbation to alleviate the pain, and his need to change positions from sitting to standing, and vice versa, every ten minutes. *Id.* at 16-17, 29. The ALJ also noted Medrano helped care for the needs of his terminally ill wife by occasionally administering her medication, occasionally bringing her food, and assisting his wife's caregivers with getting his wife up and down. *Id.* at 16, 27-30. Finally, the ALJ considered Medrano's ability to drive, which he claimed to do one to two times a week before the gout flare-up, and his testimony stating he had stopped performing all household chores and yard work after being diagnosed with diabetes. *Id.* at 16, 27-28.

In determining "[t]he evidence of record does not substantiate the degree of limitation alleged," the ALJ found parts of Medrano's testimony lacked credibility and gave more weight to the objective evidence in the record. *Id.* at 17. The evaluation of the relevant evidence in determining a claimant's RFC is within the discretion of the ALJ, particularly where inconsistencies exist. *See Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) (stating an ALJ has discretion "to discount complaints of pain based on medical reports combined with daily activities and [a] decision to forego medications.");

*see also Jones v. Heckler*, 702 F.2d 616, 622 (5th Cir. 1983) (affirming an ALJ's determination the claimant's subjective complaints about chronic pain were not credible when evidence showed claimant was not taking "an inordinate amount of prescribed pain medications.").

In the instant case, the ALJ found the "degree of limitation alleged . . . to be inconsistent with the objective evidence of record." Tr. at 17. Specifically, the ALJ found Medrano's need to "change positions from sitting to standing, and vice versa, every ten minutes, and the need to elevate his legs throughout the day" to be conflicting with the evidence. *Id* at 17, 171-72. The ALJ further noted despite Medrano's diagnosis of diabetes mellitus in October 2006, Medrano was checked one month later and showed good blood sugar control. *Id.* at 17, 158-66, 216-27. Moreover, the ALJ found the evidence "fail[ed] to substantiate the claimant's allegations that he needs to elevate his feet to waist level during periods of exacerbation" of his gouty arthritic pain. *Id.* at 17, 25, 170-73. The ALJ also found evidence suggesting Medrano's gouty arthritic pain was controlled with medication until May 2008, which did not suggest symptomatology precluding competitive work for the twelve-months required of a disability. *Id* at 17, 196-208, 241-42. Thus, although there may be evidence to support a different conclusion concerning Medrano's RFC, substantial evidence nevertheless supports the ALJ's RFC finding.

**Conclusion**

In sum, Medrano has failed to show the ALJ improperly applied the law or relied on insufficient evidence. The Court agrees the evidence in the record, as properly considered by the ALJ, fully supports the ALJ's findings, and therefore finds the Commissioner's decision is supported by substantial evidence.

Thus, in accordance with the foregoing,

IT IS ORDERED that the Report and Recommendation of the United States Magistrate Judge [#21] is ACCEPTED.

IT IS FURTHER ORDERED that the decision of the Commissioner of the Social Security Administration to deny benefits to Plaintiff Rudy Medrano is hereby AFFIRMED.

SIGNED this the 17th day of June 2010.

SAM SPARKS
UNITED STATES DISTRICT JUDGE